IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CASE NO. 3:20CV594

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>APPROXIMATELY $88,756.32 IN FUNDS )<br>SEIZED FROM BANK OF AMERICA )<br>ACCOUNT XXXXXX0535, SUCH )<br>ACCOUNT HELD IN THE NAME OF )<br>CELLPORT INTERNATIONAL INC. ) | **COMPLAINT FOR**<br>**FORFEITURE *IN REM*** |

NOW COMES the United States of America, Plaintiff herein, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

**INTRODUCTION**

1. This is a civil action *in rem* pursuant to 18 U.S.C. § 981(a)(1)(A) and (C). Procedures for this action are mandated by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and, to the extent applicable, 18 U.S.C. §§ 981, 983, and 984, and the Federal Rules of Civil Procedure.

2. This action seeks the forfeiture of all right, title, and interest in the above-captioned property (hereafter, "the Funds") because the Funds constitute or are derived from proceeds of interstate transportation of stolen property and conspiracy to commit same, in violation of 18 U.S.C. § 2314 and 18 U.S.C. § 371, and/or constitute property involved in or property traceable to

1

property involved in money laundering and money laundering conspiracy in violation of 18 U.S.C. §§ 1957, 1956, and 1956(h).

3. This Court has jurisdiction over this action commenced by the United States under 28 U.S.C. § 1345 and over this action for forfeiture under 28 U.S.C. § 1355(a). The Court has *in rem* jurisdiction over the Funds under 28 U.S.C. § 1355(b).

4. This Court has venue pursuant to 28 U.S.C. §§ 1355 and 1395. Venue is proper because the acts or omissions giving rise to the forfeiture occurred in this district, the claim accrued in this district, and the Funds were found in this district.

5. The defendant is all present and future interest in the Funds.

6. In or about October 2019, the United States Secret Service ("Secret Service") seized the Funds in the Western District of North Carolina pursuant to a federal Seizure Warrant (WDNC Case 3:19MJ356) for forfeiture. The Secret Service, Western District of North Carolina, via the Department of the Treasury, is currently holding the Funds.

7. Pursuant to Supplemental Rule G(2)(f), facts in support of a reasonable belief that the Government will be able to meet its burden of proof at trial are as follows and have been verified by the attached Verification of Charlotte-Mecklenburg Police Department ("CMPD") Detective and Secret Service Task Force Officer, Matthew Mescan.

**SUMMARY**

8. From at least January 2018 until October 2019, while in the Western District of North Carolina, owners and employees of D-Town Trading Inc. ("D-TOWN"), Celltec Wireless, LLC ("CELLTEC"), and Cellport International, Inc. ("CELLPORT") and others engaged in interstate transportation of stolen property, and illegal monetary transactions and money

2

laundering with the proceeds of such activity.

9. The owners and employees of the cellular telephone storefront, D-TOWN, purchased new-in-box mobile phones with retail packaging still on the boxes (hereafter, "New Phones") from individuals on the secondary market. The New Phones sold by the individuals to D-TOWN had either been stolen from retail stores or fraudulently obtained through, among other means, identity theft. The owners and employees of D-TOWN, and related businesses, CELLTEC and CELLPORT, then shipped the stolen and fraudulently obtained New Phones overseas to customers located in United Arab Emirates and Hong Kong for a significant profit. Bank wire transfers were then credited by the overseas customers to a Bank of America Account, identified in the caption to this Complaint and held in the name of CELLPORT. This same account that received proceeds of the interstate transportation of stolen property was then used to fund cash withdrawals made by the owners of D-TOWN, CELLTEC, and CELLPORT, who, in-turn, used cash to purchase more New Phones from individuals on the secondary market. Law enforcement ultimately seized the Funds from this account.

**INDIVIDUALS AND ENTITIES INVOLVED IN THE CRIMINAL ACTIVITY**

10. **D-TOWN** was an independently-owned mobile telephone store located at 2808 West Sugar Creek Road, Charlotte, North Carolina, in the Western District of North Carolina.

11. D-TOWN was incorporated in North Carolina on or about February 5, 2014 by Tayseer ALKHAYYAT.

12. In a 2018 North Carolina Secretary of State filing for D-TOWN, Jamal ALASFAR is listed as the "President" of D-TOWN. Jamal ALASFAR is also known by his first name, "Taha."

13. **CELLTEC** was an independently-owned company located at 4109 Stuart Andrew Boulevard, Suite E, Charlotte, North Carolina, in the Western District of North Carolina.

14. On or about April 17, 2019, Tayseer ALKHAYYAT incorporated CELLTEC.

15. Prior to the incorporation of CELLTEC, the 4109 Stuart Andrew Boulevard location was the address for a company known as "Megatel Wireless" ("MEGATEL") with a website at www.ShopMegatel.com which stated that its location was 4109 Stuart Andrew Boulevard, Suite E, Charlotte, North Carolina.

16. **CELLPORT** was an independently-owned company located at 4109 Stuart Andrew Boulevard, Suite G, Charlotte, North Carolina.

17. On or about October 31, 2018, Tayseer ALKHAYYAT and Hamzeh ALASFAR incorporated CELLPORT.[1]

18. **Tayseer ALKHAYYAT** ("ALKHAYYAT") was a resident of Charlotte, North Carolina, a citizen of the Kingdom of Jordan, and a lawful permanent resident of the United States.

19. According to the North Carolina Employment Commission, ALKHAYYAT's latest reported income was in the last quarter of 2018 from employers "Megatel Wireless" and "D Town Trading Inc."

20. According to U.S. Immigration and Customs Enforcement records, ALKHAYYAT claimed in May 2018 that he was a district manager for "Megatel Wireless" and that he was previously a manager at "Dtown 1 Inc" at D-TOWN's address.

21. ALKHAYYAT also claimed in a 2018 U.S. citizenship application that his mailing address was CELLTEC's address.

22. **Hamzeh ALASFAR** was a resident of Charlotte, North Carolina, a citizen of the

---

[1] Suites E and G of 4109 Stuart Andrew Boulevard (collectively, "WAREHOUSE") are separated by an unaffiliated unit, located at Suite F.

4

Kingdom of Jordan, and a lawful permanent resident of the United States.

23. According to the North Carolina Employment Commission, Hamzeh ALASFAR's latest reported income was in the last quarter of 2018 from employers named "D Town Trading Inc" and "D Town 1 Inc."

24. **Taha Jamal ALASFAR** was a resident of Florida, a citizen of the Kingdom of Jordan, and a lawful permanent resident of the United States.

25. **William Restrepo ASCOBAR**, also known as William Restrepo ("ASCOBAR"), was a resident of Charlotte, North Carolina and was an employee of D-TOWN, CELLTEC, and CELLPORT.

26. According to the North Carolina Employment Commission, ASCOBAR's latest reported income was in the last quarter of 2014 from employer "D Towon 1 Inc."

27. **Heather MOORE** ("MOORE") was a resident of Charlotte, North Carolina and was an employee of CELLPORT.

28. According to the North Carolina Employment Commission, MOORE's latest reported income was in the first quarter of 2019 from employer "Cellport International."

29. **Yasin ALASFAR** was an employee of CELLPORT.

30. **Suhaib ALASFAR** was an employee of D-TOWN.

31. According to the North Carolina Employment Commission, Suhaib ALASFAR's latest reported income was in the first quarter of 2019 from employer "D Town Wireless Inc."

## SURVEILLANCE AND UNDERCOVER SALES AT D-TOWN

32. The small D-Town storefront, situated in-between a Subway restaurant and a coin laundry, is pictured as follows:



33. From in or about December 2018 to in or about October 2019, law enforcement officers conducted surveillance at D-TOWN.

34. On many dates during the surveillance time period, law enforcement officers observed numerous unidentified persons carrying New Phones walk into D-TOWN. The persons generally remained inside D-TOWN for several minutes, and then exited D-TOWN without the New Phones in their hands. These deliveries of New Phones generally occurred between about 10:00am and 6:00pm, which were the usual business hours of D-TOWN. On several occasions, agents observed persons who carried New Phones inside D-TOWN count what appeared to be U.S. Currency when they exited.

35. In or about February 2019, mobile phone carriers, including Verizon and Sprint,

6

provided law enforcement with approximately nine (9) newer-model Apple iPhones (specifically, iPhone X, iPhone XSMax, iPhone XR, and iPhone 8 Plus models) to be used as undercover phones in controlled transactions with D-TOWN.

36. On or about April 30, 2019, two undercover CMPD law enforcement officers sold undercover phones to D-TOWN employee Mohammad ELASFAR ("ELASFAR") inside D-TOWN in two separate transactions on the same day. In the first transaction, one undercover phone with a retail value of approximately $1,449.00 was sold and given to ELASFAR for $750.00 in cash. In the second transaction, two undercover phones with a combined retail value of approximately $1,648.00 were sold and given to ELASFAR for $850.00 in cash.

37. A few days later, on or about May 2, 2019, the same two undercover law enforcement officers sold undercover phones in two separate transactions to ELASFAR. In the first transaction, three undercover phones with a retail value of approximately $3,997.00 were sold and given to ELASFAR for $2,460.00 in cash. In the second transaction, three undercover phones with a combined retail value of approximately $2,447.00 were sold and given to ELASFAR for $1,170.00 in cash. While the undercover law enforcement officers were inside D-TOWN during the first transaction on May 2, 2019, ASCOBAR and Suhaib ALASFAR were walking behind the sales counter, and Suhaib ALASFAR appeared to purchase numerous new phones from an unidentified person who had carried them within a large red canvas bag into D-TOWN.

38. Two undercover law enforcement officers sold a total of nine undercover phones to ELASFAR at D-TOWN in multiple transactions within a three-day period. The undercover phones, which had a combined retail value of approximately $9,500.00, were sold for a total of approximately $5,230.00, or fifty-five percent (55%) of retail value.

7

## SURVEILLANCE OF CELLTEC AND CELLPORT

39. Between about December 2018 and October 2019, law enforcement officers conducted surveillance at CELLTEC and CELLPORT.

40. On numerous dates during the December 2018 through October 2019 period when law enforcement was engaged in surveillance of D-TOWN, law enforcement officers involved in the investigation observed ASCOBAR drive his vehicle to the rear of D-TOWN prior to being opened for business and before any customers entered D-TOWN. Law enforcement officers observed ASCOBAR enter the rear door of D-TOWN, remain inside for several minutes, and then walk out of the rear door of D-TOWN. Sometimes, ASCOBAR walked out carrying semi-transparent bags containing approximately twenty to fifty New Phones, and, other times, ASCOBAR walked out accompanied by Suhaib ALASFAR, at which point ASCOBAR or ALASFAR was carrying semi-transparent bags containing approximately twenty to fifty New Phones. The bags containing New Phones were then placed inside ASCOBAR's vehicle. ASCOBAR then left D-TOWN in his vehicle, and law enforcement officers observed ASCOBAR arrive at the rear of CELLTEC and CELLPORT. After ASCOBAR arrived at the rear of CELLTEC or CELLPORT, ASCOBAR, MOORE, Yasin ALASFAR, or other persons carried the bags containing New Phones from ASCOBAR'S vehicle into CELLTEC and/or CELLPORT.

41. On or about June 17, 2019 and July 1, 2019, law enforcement officers observed ASCOBAR drive his car to the rear of CELLTEC and CELLPORT and carry several bags containing what appeared to be New Phones into CELLTEC and CELLPORT through a garage door at the rear the building. While the garage door was opened, law enforcement officers observed, in plain view from the parking lot of CELLTEC and CELLPORT, a folding table on which approximately twenty-five to thirty New Phones were stacked on top of each other. During

8

the July 1, 2019 surveillance, a law enforcement officer observed several cardboard boxes with white and blue security shipping tape along the boxes' seams stacked just inside the garage door.

42. Also on several dates during this surveillance time period, law enforcement officers observed ALKHAYYAT, MOORE, Yasin ALASFAR, ASCOBAR, and other unidentified individuals walk back and forth between CELLTEC and CELLPORT through each suite's front door, rear door, and rear garage door, indicating to your Affiant that these people are employed by CELLTEC and CELLPORT and that CELLTEC and CELLPORT are associated companies.

43. On or about October 3, 2019, law enforcement viewed a video, posted on or about October 2, 2019, on Instagram by user "tk.sam87," which has a photograph of ALKHAYYAT and the name "Tayseer Alkhayyat" on the username's profile. This video was approximately fifteen (15) seconds long and appears to have been recorded by ALKHAYYAT. In the video, the camera shows ALKHAYYAT's face when he says, "…going on in our office…" and recording the interior of what appears to be either CELLTEC or CELLPORT, including several folding tables, the same type of which were observed in CELLTEC and CELLPORT on about June 17, 2019 and July 1, 2019. Yasin ALASFAR and another unidentified male are sitting at the folding table while ALKHAYYAT is recording the video, and Yasin ALASFAR is typing on a white laptop computer. Also observed in the video are several large cardboard boxes with white and blue security shipping tape along the boxes' seams.

## SHIPMENTS OF NEW PHONES OVERSEAS

44. U.S. Customs and Border Protection has identified historical shipping information on packages shipped by "Cellport Int'l Trading Inc," "Dtown Trading LLC DBA Cellport," and "Cellport International Trading" between January 2019 and July 2019; and shipped by "Dtown"

9

between February 2017 and July 2019. The packages were shipped to companies named Litian Technology, Litian Tech Trade Limited, Action Logisics, and Union Logistics, located in United Arab Emirates and Hong Kong. There were a total of approximately 271 packages mailed with a combined weight of approximately 19,000 pounds, and a declared customs value of approximately $8,900,000.00. The description of the contents of all the packages, as provided by the sender, included "cell phone," "apple watch," "apple iPhone," "other radio telephones," "mobile phones," "iPhone XS Max," "mixed lot of iPhone X XS MSMAX," and "Samsung Galaxy Note 9."

45. Additionally, between August 2017 and July 2019, Hamzeh ALASFAR sent approximately sixty-four packages via FedEx from CELLTEC and CELLPORT to Action Logistics, Union Logistics, Dongchao Telecom, and Haowei Telecom in United Arab Emirates and Hong Kong. These packages had a combined weight of approximately 876 pounds and were described by the sender as containing "iPhone," "used phone parts," "other radio telephones," "electronic parts," and/or "cell phones."

46. Between in or about May 2019 and June 2019, ALKHAYYAT, Yasin ALASFAR, ASCOBAR, and Ahmad ZAGHARI (another suspected employee of CELLTEC and CELLPORT) regularly dropped-off multiple packages several times each week at the FedEx Office store located at 301 East Woodlawn Road, Charlotte, North Carolina. The packages were addressed to UAE and Hong Kong. For example, store video footage depicts Yasin ALASFAR, ASCOBAR, and MOORE dropping off multiple packages on May 31, 2019, June 7, 2019, and June 11, 2019. The boxes that Yasin ALASFAR, ASCOBAR, and MOORE dropped-off on all three dates had the same white and blue security shipping tape along the boxes' seams that were stacked just inside the garage door of CELLTEC and CELLPORT on or about July 1, 2019 and depicted in the October 2, 2019 video posted to social media by ALKHAYYAT.

## THE BANK ACCOUNT USED DURING THE OFFENSES

47. On or about November 14, 2018, ALKHAYYAT and Hamzeh ALASFAR opened Bank of America Account 0535 ("ACCOUNT 0535") in the company name, "Cellport International Inc."

48. Bank wire transfers were credited to ACCOUNT 0535 by overseas customers named "Union Logistics FZE" and "Dongchao Tele" for the sale of New Phones.

49. From approximately November 2018 through September 2019, approximately fifty-seven bank wire transfers totaling $4,200,000 were credited by "Union Logistics FZE," "Action Logistics FZE," and "Dongchao Tele" to ACCOUNT 0535. These incoming wires ranged in amounts between approximately $20,000.00 to $208,000.00 each. The approximate total deposit amount from "Union Logistics FZE" in this eight month time period was approximately $2,500,000.00 in approximately twenty-five deposits. The approximate total deposit amount from "Action Logistics FZE" in this eight month time period was approximately $1,400,000.00 in approximately twenty-six deposits. The approximate total deposit amount from "Dongchao Tele" in this eight month time period was approximately $313,000.00 in approximately six deposits.

50. Below is a timetable that details the relationship between shipments by CELLTEC and CELLPORT to "Union Logistics FZE" and "Dongchao Tele," and the bank wire deposits into ACCOUNT 0535 during May and June 2019. The bank wire deposits by "Union Logistics FZE" and "Dongchao Tele" into ACCOUNT 0535 represent payment for New Phones purchased from individuals by CELLTEC and CELLPORT, and then sold and shipped by CELLTEC and CELLPORT to Union Logistics and Dongchao Tele.

| DATE | SHIPMENT ACTIVITY | DEPOSIT ACTIVITY |
|---|---|---|
| 5/1/19 | | $169,860.00 deposited from "Union Logistics FZE" into ACCOUNT 0535 |
| 5/3/19 | Shipment sent via FedEx to Union Logistics FZE | |
| 5/8/19 | Shipment sent via FedEx to Dongchao in Hong Kong | $58,583.00 deposited from "Union Logistics FZE" into ACCOUNT 0535 |
| 5/9/19 | Shipment sent via FedEx to Union Logistics FZE | |
| 5/13/19 | | $184,481.00 deposited from "Union Logistics FZE" into ACCOUNT 0535 |
| 5/14/19 | Shipment sent via FedEx to Union Logistics FZE | |
| 5/20/19 | | $157,890.00 deposited from "Union Logistics FZE" into ACCOUNT 0535 |
| 5/24/19 | Shipment sent via FedEx to Union Logistics FZE | |
| 6/4/19 | | $68,924.00 deposited from "Dongchao Tele" into ACCOUNT 0535 |
| 6/14/19 | Shipment sent via FedEx to Union Logistics FZE | |
| 6/20/19 | | $189,758.00 deposited from "Union Logistics FZE" into ACCOUNT 0535 |

51. As least as recently as October 2019, ACCOUNT 0535 continued to receive deposits in the manner outlined above.

**EXECUTION OF FEDERAL SEARCH AND SEIZURE WARRANT**

52. On or about October 8, 2019, law enforcement obtained a Seizure Warrant for the contents of ACCOUNT 0535 and Search and Seizure Warrants for D-TOWN, CELLTEC, and CELLPORT from a U.S. Magistrate Judge in the Western District of North Carolina.

53. On or about October 17, 2019, law enforcement officers seized the Funds and searched D-TOWN, CELLTEC, and CELLPORT.

54. Upon execution of the Search and Seizure Warrant at D-TOWN , law enforcement seized paper documents.

55. Law enforcement seized documnts that appeared to be "receipts" and "business records" that indicated the dates on which D-TOWN purchased New Phones from customers and the prices and quantities for which D-TOWN paid for the New Phones. These documents indicated that numerous customers sold multiple New Phones on each occasion to D-TOWN for approximately 50% retail value of the New Phones.

56. Law enforcement also seized documents that indicated that ASCOBAR and Yasin ALASFAR transported at least approximately 1,500 mobile phones and other electronic devices, valued at approximately at least $600,000.00 as hand-written on the documents, from D-TOWN to CELLTEC and CELLPORT between July and December of an unspecified year.

57. The manager of D-TOWN, Mohammad ELSAFAR, who was present at D-TOWN during the search, explained to law enforcement that D-TOWN had very recently stopped buying New Phones, therefore, there were approximately only two New Phones and one new iPad seized from D-TOWN. This is likely due to the fact that a Search and Seizure Warrant that was executed a few days earlier at one of D-TOWN's competitor's stores in Charlotte, North Carolina.

58. Photographs, as of the day of the search, of the interior of the D-Town store, which primarily contained cell phone cases and clothes, are as follows (one photograph is redacted to remove images of police officers):





14

59. Upon execution of the Search and Seizure Warrants at CELLTEC and CELLPORT, law enforcement seized a variety of items.

60. For example, law enforcement seized paper invoices and computers that contained digital invoices that indicated that CELLTEC and CELLPORT shipped New Phones to companies in United Arab Emirates and Hong Kong, including "Action Logistics" and "Hong Kong Dongchao Tele," or indicated that companies within the United States, but outside of North Carolina, shipped New Phones to CELLTEC or CELLPORT.

61. Law enforcement also seized digital shipping labels indicating that CELLTEC and CELLPORT created shipping labels for packages intended for shipment to United Arab Emirates and Hong Kong, including to "Action Logistics" in United Arab Emirates.

62. Law enforcement also seized approximately $10,518.00 in U.S. currency from D-TOWN and approximately $16,403.00 from CELLTEC and CELLPORT.

63. In total, the paper invoices and digital invoices contained an approximate total of 4,300 IMEIs (individual mobile equipment identifier numbers).

64. Between approximately March 2020 and August 2020, law enforcement provided the IMEIs to representatives of Verizon, Sprint, and AT&T who confirmed that approximately 62% of these devices were, in fact, obtained through identity theft or larceny from the phone carriers' retail stores. The other approximate 38% of these devices were sold by a yet unidentified authorized retail store.

## CONCLUSION

65. By virtue of the foregoing and pursuant to 18 U.S.C. § 981(f), all right, title, and interest in the Funds vested in the United States at the time of the commission of the unlawful act

giving rise to forfeiture and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

2. Judgment be entered declaring the Funds to be condemned and forfeited to the United States of America for disposition according to law; and

3. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Funds as required by 28 U.S.C. § 1921.

Respectfully submitted, this the 27th day of October, 2020.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

**s/Benjamin Bain-Creed**
FL Bar Number 21436
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Facsimile: (704) 344-6629
Email: benjamin.bain-creed@usdoj.gov

## VERIFICATION

Matthew Mescan deposes and says under penalty of perjury:

I am a Task Force Officer with the United States Secret Service and one of the agents assigned to this case.

I have read the foregoing Complaint and the factual information contained therein is true according to the best of my knowledge, information, and belief.

_____   10/26/20
Task Force Officer Matthew Mescan    Date

17